Coos
No. 7923

THE STATE OF NEW HAMPSHIRE

v.

RICHARD N. HOGG AND WILLIAM G. SIMPSON, JR.

April 25, 1978

*David H. Souter*, attorney general (*John C. Boeckeler*, assistant attorney general, orally), for the State.

*Harvey Brower*, of Lawrence, Massachusetts and *Charles F. Dalton*, of Andover, Massachusetts (*Mr. Brower* orally), for the defendants.

GRIMES, J. The issue in this bank robbery case is whether acquittal in the federal court bars prosecution by the State when the charges against both defendants arose out of the same criminal transaction.

On February 20, 1976, a federally insured bank in Colebrook, New Hampshire, was robbed. Defendant Hogg was charged in federal court with robbery and defendant Simpson with being an accessory before the fact. Hogg was found not guilty by a jury in the United States District Court for the District of New Hampshire. After two trials resulting in hung juries, a judgment of acquittal was entered for Simpson.

Following Hogg's acquittal and Simpson's first trial in the federal court, indictments were sought and obtained from a Coos County grand jury charging Hogg as principal and Simpson as accessory to the same bank robbery. Motions to dismiss on the ground of double jeopardy under both the Federal and the New Hampshire Constitutions were denied and *DiClerico*, J., transferred defendants' exceptions.

In *Bartkus v. Illinois*, 359 U.S. 121 (1959), the Supreme Court of the United States by a closely divided opinion held on the basis of dual sovereignty that the double jeopardy clause of the Federal Constitution does not prohibit the trial of a defendant in a State court after a trial and acquittal in the federal courts even though both offenses result from the same transaction. *See also United States v. Wheeler*, 435 U.S. 313 (1978).

In *Abbate v. United States*, 359 U.S. 187 (1959), the principle was applied to allow a federal prosecution following a conviction in a State court. In response to repeated expressions of concern by members of the Supreme Court, what has become known as the

"Petite" policy has been adopted, limiting the exercise of this power by federal prosecutors. Petite v. United States, 361 U.S. 529 (1960). This policy is designed "to protect interest, which, but for the dual sovereignty principle inherent in our federal system, would be embraced by the Double Jeopardy Clause."

*Bartkus* however is not binding on this court in construing N.H. Const. pt. I, art. 16, or in applying our due process protection in this area. *State v. Leclair,* 118 N.H. 214, 385 A.2d 831 (1978) ; *State v. Phinney,* 117 N.H. 145, 370 A.2d 1153 (1977). The same separate sovereignty concept under which the United States Supreme Court has held that the Federal Constitution does not protect citizens from dual prosecutions permits the States independently to construe their own constitution as affording such protection.

It should be remembered that our constitutional provision against double jeopardy became part of our Bill of Rights before the formation of the Union, and therefore it is doubtful if the problem of dual sovereignty with a federal government was contemplated. The underlying basis for the provisions in both Constitutions is the protection of the individual against repeated prosecutions for the same crime. It is fundamentally and morally wrong to try a man for a crime of which he has already been tried and found not guilty. "The public interest . . . [in this safeguard] is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' *See Fong Foo v. United States,* 369 U.S. 141, 143." *Arizona v. Washington,* 434 U.S. 497 (1978). Although guilt or innocence is not a proper consideration in double jeopardy cases, *see Menna v. New York,* 423 U.S. 61 (1974), successive trials may increase the possibility of convicting an innocent person. *See Green v. United States,* 355 U.S. 184, 187–88 (1957); *Carsey v. United States,* 392 F.2d 810, 813 (1967).

"Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization. Its roots run deep into Greek and Roman times. . . . It has, in fact, been described as a part of all advanced systems of law and as one of those universal principles 'of reason, justice and conscience of which Cicero said: "Nor is it one thing at Rome and another at Athens, one now and another in the future, but among all nations it is the same." ' " *Bartkus v. Illinois,* 359 U.S. at 151–54 (Black, J., dissenting).

As noted above the principles of federalism which is the basis for the Bartkus decision could not have been in the minds of our fore-fathers when our State constitution was adopted in 1784. N.H. Const. pt. I, art. 16, which predates federalism, provides that "[n]o subject shall be liable to be tried, after an acquittal, for the same crime or offense." The original Constitution of the United States contained no limitations upon the power of the new government. New Hampshire adopted the Federal Constitution in 1788. In so doing she, like a number of other states, expressed a desire that certain restrictive clauses be added. As a result the first ten amendments, which included the double jeopardy clause of the fifth, were adopted by the First Congress and ratified by New Hampshire in 1790. Having so recently adopted her own constitution containing the strong language of part I, article 16 against trial after acquittal, and having so recently insisted that a similar restriction be placed upon the new Federal Government, it is inconceivable that out forefathers intended that by the establishment of the Federal Government they would in effect be nullifying and destroying this bulwark of justice, the principle of which was so deeply rooted in the traditions of our people.

The double jeopardy clauses of the New Hampshire and United States Constitutions were adopted without extended debate or explicit indication of the meanings they were intended to have. However, Rep. Livermore of New Hampshire, a leading force in our early constitutional conventions, when faced with a proposed change to the double jeopardy clause of the Federal Constitution stood firm.

> Mr. Livermore thought the clause very essential; it was declaratory of the law as it now stood; striking out the words, would seem as if they meant to change the law by implication, and expose a man to the danger of more than one trial. Many persons may be brought to trial for crimes they are guilty of, but for want of evidence may be acquitted; in such cases, it is the universal practice in Great Britain, and in this country, that persons shall not be brought to a second trial for the same offence; therefore the clause is proper as it stands. U.S. *Annals of Congress*, 1st. Cong., 1st. Sess. 1789, I, Col. 782.

The clearest expression of what the practice was in Great Britain at the time of the adoption of our constitutional provision and the federal double jeopardy clause was as follows:

> A final determination in a Court having competent jurisdiction is conclusive in all Courts of concurrent jurisdiction; therefore if A., having killed a person in Spain, were

there prosecuted, tried and acquitted, and afterward were indicted here, at Common Law, he might plead the acquittal in Spain in bar. *King v. Roche,* 1 Leach 134, 168 Eng. Rep. 169 (Crown 1775).

*King v. Hutchinson,* 3 Keb. 785, 84 Eng. Rep. 1011 (K.B. 1678), decided three hundred years ago is illustrative. Mr. Hutchinson "had killed Mr. Colson in Portugal, and was acquitted there of the murder: and being afterwards apprehended in England for the same fact, and committed to Newgate, he was brought into the Court of King's Bench by *Habeas Corpus,* where he produced an exemplification of the Record of his acquittal in Portugal; but the King being very willing to have him tried here for the same offence, it was referred to the consideration of the Judges, who all agreed, that as he had been already acquitted of the charge by the law of Portugal, he could not be tried again for it in England." *King v. Roche,* 168 Eng. Rep. 169 (Crown 1775).

With regard to our own constitution, we agree with the reasoning of Mr. Justice Black in *Bartkus* that the purpose of part I, article 16, is to give protection to the individual and that the danger to the innocent from successive prosecution after acquittal "is no less when the power of State and Federal Governments is brought to bear on one man in two trials, than when one of these 'Sovereigns' proceeds alone." 359 U.S. at 155.

The crimes involved in these cases are the same as those for which the defendants have been acquitted. Each crime does not require proof of facts not required by the other. *Brown v. Ohio,* 432 U.S. 161 (1977). It is pure fiction to say they are different crimes because of dual sovereignty. We need not however dwell on the question whether they are different crimes because the only issue in the federal court was whether defendants participated in the criminal transaction. This issue was resolved in their favor and it is the same issue which will be involved in any State trial. The collateral estoppel aspect of double jeopardy therefore comes into play whether the crimes are legally the same or different. *State v. Proulx,* 110 N.H. 187, 263 A.2d 673 (1970); *Ashe v. Swenson,* 397 U.S. 436 (1970).

We do not have here cases in which the defendants have been convicted in the federal court. In such cases the argument at least can be made that the punishment provided by one sovereign may not be sufficient to satisfy the interest of the other, and that therefore a second conviction should not be barred. We have here defendants who have been acquitted of the very crime for which the State seeks to try them again. Therefore whatever reasons there may be for permitting,

in the name of federalism, a second prosecution in the State court after a conviction in the federal court, they "lose all force when the first prosecution ends in a finding of not guilty." *State v. Pope*, 186 Neb. 486, 184 N.W.2d 395 (1971).

Because the purpose of N.H. Const. pt. I, art. 16 is to protect the individual, we agree with Justice Black in his dissent in *Bartkus* and with the courts in *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971), and *People v. Cooper*, 398 Mich. 450, 247 N.W.2d 866 (1976), that we should look to the individual's interests rather than to the interests of the sovereign in determining whether these prosecutions are barred. Looking at the matter from that standpoint, we cannot escape the conclusion that the individual citizen is as much endangered by a second prosecution by the same sovereign after an acquittal as he would be by such a second prosecution by a different sovereign under our federal system. We therefore hold that these prosecutions are barred under N.H. Const. pt. I, art. 16.

We are not unmindful of the case of *State v. Whittemore*, 50 N.H. 245 (1870), in which the court quoted Greer, J. in *Moore v. Illinois*, 14 How. 13, 20 (1852), that a citizen of the United States and a State "may be liable to punishment for an infraction of the laws of either. The same act may be an infraction of the laws of both." This quotation appears however in a discussion of the question whether the State had jurisdiction to punish for perjury in connection with an application for naturalization. There had been no trial in the federal court and, the question of double jeopardy was not actually involved in the case. The statements were therefore pure dicta. Moreover nothing was said about the right to prosecute in the State court after an acquittal in the federal court. In any event, to the extent that *Whittemore* is in any way inconsistent with our decision in this case, it is overruled. *State v. Gendron*, 80 N.H. 394, 118 A. 814 (1922), in which the defendant had been convicted rather than acquitted in a federal court, presents an issue which is not raised, and we reserve any discussion of the consequences of such a conviction upon a State prosecution for the same offense for a more appropriate time.

*Exceptions sustained.*

BOIS, J., dissents; the others concurred.