Edward A. PUGLIESE, Petitioner, Appellee,

v.

Everett I. PERRIN, Jr., etc., et al., Respondents, Appellants.

No. 83–1635.

United States Court of Appeals, First Circuit.

Argued Dec. 9, 1983.

Decided March 30, 1984.

Brian T. Tucker, Concord, N.H., Asst. Atty. Gen., with whom Gregory H. Smith, Atty. Gen., Concord, N.H., was on brief, for appellants.

Gilbert Upton, Concord, N.H., with whom Upton, Sanders & Smith, Concord, N.H., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This habeas corpus case arises from petitioner Edward Pugliese's conviction for negligent homicide. The homicide resulted from a fight between Pugliese and Denis Champagne. Champagne had been having an affair with Pugliese's wife, or at least so Pugliese believed. There is a dispute as to who instigated the fight, but there is no dispute that when it was over Champagne was dead as the result of five stab wounds.

Pugliese has been tried three times, the final trial resulting in a conviction for negligent homicide. In order to understand Pugliese's claim that his constitutional right against double jeopardy has been violated, a review of the state court proceedings is necessary.

## I.

Pugliese was initially charged with manslaughter. He pleaded self-defense, claiming that Champagne started the fight, that Champagne was an expert in karate, had a

reputation for violence, and had threatened him with physical harm. The trial judge twice charged the jury that if it found Pugliese not guilty of manslaughter, then it should determine whether he was guilty of the lesser-included offense of negligent homicide.[1] After two days of deliberations, the jury informed the court that it could not agree. The judge consulted with counsel and indicated that he intended to declare a mistrial. The defense attorney requested that before doing so the judge ask the jury whether they had reached a decision on the manslaughter charge. The judge declined to do so, declared a mistrial, and discharged the jury.

Pugliese was retried on the manslaughter charge. This time the jury found him guilty of the lesser-included offense of negligent homicide. This conviction was appealed to the New Hampshire Supreme Court which set it aside on the ground that Pugliese's right against double jeopardy had been violated in the first trial because there was no "manifest necessity" for a mistrial declaration. *State v. Pugliese,* 120 N.H. 728, 422 A.2d 1319 (1980). The court ruled that Pugliese could be retried for negligent homicide, but not for manslaughter.

At the third trial, the trial court allowed defendant to assert a plea of self-defense, the same defense relied on in the prior two trials. Over defendant's objection, the jury was given the following instruction:

> As I have stated, the third element the State must prove beyond a reasonable doubt is that the defendant acted negligently. A person acts negligently when he fails to become aware of a substantial risk that the material element exists or will exist from his conduct. The risk must be of such a nature or degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation.
>
> Further, when the law provides that negligence suffices to establish an element of an offense such element is also established if the State proves beyond a reasonable doubt that a person acted purposely, knowingly or recklessly.

The instruction tracks the New Hampshire statute setting forth the general requirements of culpability. N.H.Rev.Stat.Ann. ch. 626, § 2.[2]

---

**1.** Manslaughter is defined as causing the death of another, "Recklessly." N.H.Rev.Stat.Ann. ch. 630, § 2 I(b).

Negligent Homicide is defined as causing the death of another, "Negligently." N.H.Rev.Stat. Ann. ch. 630, § 3 I.

**2.** The culpability statute provides in pertinent part:

II. The following are culpable mental states:

(a) "Purposely." A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element.

(b) "Knowingly." A person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist.

(c) "Recklessly." A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication or hypnosis also acts recklessly with respect thereto.

(d) "Negligently." A person acts negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation.

III. When the law provides that negligence suffices to establish an element of an offense, such element is also established if the person acts purposely, knowingly or recklessly. When recklessness suffices, the element is also established if the person acts purposely or knowingly. When acting knowingly suffices, the element is also established if a person acts purposely.

N.H.Rev.Stat.Ann. ch. 626, § 2 II & III.

Pugliese was convicted of negligent homicide after the third trial. He appealed to the New Hampshire Supreme Court on the grounds that the instruction incorporating purposeful, knowing or reckless conduct as part of the negligent homicide offense unfairly forced him to relitigate issues previously determined in his favor and violated his constitutional guarantee against double jeopardy. The New Hampshire Supreme Court held "that the challenged jury instruction neither prejudiced the defendant nor unfairly forced him to litigate issues previously determined in his favor. Any error committed by the trial court was harmless beyond a reasonable doubt." *State v. Pugliese,* 122 N.H. 1141, 1147, 455 A.2d 1018, 1022 (1982). It also rejected Pugliese's double jeopardy claim:

> The defendant, however, was not subject to double jeopardy because he was never in any danger of being reprosecuted for manslaughter. "Double jeopardy only prohibits reprosecution where the second offense charged is the same as the first, both in law and in fact." *State v. Heinz,* 119 N.H. 717, 720, 407 A.2d 814, 816 (1979). The greatest offense for which the defendant could be convicted was negligent homicide, and the jury was so instructed.

*Id.*

The district court, 567 F.Supp. 1337 found that petitioner's constitutional guarantee against double jeopardy had been violated and the state has appealed. We affirm the district court.

## II.

■ We start our analysis by stating the basic principles of the constitutional guarantee against double jeopardy.

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The constitutional guarantee consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted).

■ Collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1978). It "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194.

■ There can be no doubt that Pugliese could not be tried again for manslaughter. As the New Hampshire Supreme Court recognized, his conviction at the second trial of negligent homicide meant that the jury had acquitted him of manslaughter. *State v. Pugliese,* 120 N.H. 730, 422 A.2d 1321, citing *Green v. United States,* 355 U.S. at 190, 78 S.Ct. at 225.

The question is whether instructing the jury that it could find Pugliese guilty of negligent homicide on the basis of either purposeful, knowing or reckless conduct violated principles of criminal collateral estoppel as embodied in the fifth amendment guarantee against double jeopardy. We think it did. The Supreme Court enunciated the proper approach in *Ashe v. Swenson:*

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court "to examine the record of a prior

proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

397 U.S. at 444, 90 S.Ct. at 1194. The record and jury instructions in the second trial demonstrate that Pugliese's mental state was the only real issue in dispute, and therefore collateral estoppel on that issue is appropriate.

To the extent that negligent homicide could technically have been proved in the third trial on the basis of purposeful, knowing or reckless conduct, such proof was precluded by the rule of collateral estoppel. Pugliese was acquitted of acting purposefully, knowingly or recklessly in the second trial and the state could not prove negligent homicide by asserting facts necessarily determined against it. *United States v. Phillips*, 664 F.2d 971, 1005 (5th Cir.1981); *United States v. Mespoulede*, 597 F.2d 329, 335 (2d Cir.1979); *United States v. Kramer*, 289 F.2d 909, 916 (2d Cir.1961).

The state's reliance on the general culpability statute, N.H.Rev.Stat.Ann. ch. 626, § 2 III, *supra* n. 2, runs afoul of the same-offense rule enunciated in ·*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In that case, the court held:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182. When the Court charged the jury that it could find Pugliese guilty of negligent homicide on the basis of the elements of the crime of manslaughter, it merged both offenses into one. In *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Court grappled with the reverse side of the problem

presented here. Vitale was found guilty, after a fatal automobile accident, of failing to reduce speed. Based on the same facts, he was subsequently charged with involuntary manslaughter. The Court held that "a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense—an offense consisting solely of one or more of the elements of the crime for which he has already been convicted." *Id.* at 421, 100 S.Ct. at 2267. It noted that under *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), a conviction on a lesser-included offense bars a subsequent trial on the greater offense. The Court then went on to state:

> By analogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution.

447 U.S. at 421, 100 S.Ct. at 2267.

We think the rationale is applicable here. Pugliese could not constitutionally be prosecuted again for a crime comprising the same elements as manslaughter, an offense for which he had already been acquitted. He could, however, be prosecuted for negligent homicide to the extent that it involved elements separate and distinct from those of manslaughter.[3]

In the third trial, the offense charged was negligent homicide. The state had to prove negligence. The problem that the state faced was the difficulty of proving that Pugliese acted negligently when he claimed, not that he was unaware of the risk involved, but that he acted in self-defense. This evidentiary gap could not be plugged by proof of purposeful, knowing or reckless conduct which could only be the basis for a conviction of manslaughter of which Pugliese had already been acquitted.

**3.** Judge Campbell considers the collateral estoppel holding adequate to resolve this case and does not agree with the application of double jeopardy to the negligent homicide charge.

We do not agree with the state or the New Hampshire Supreme Court that the amalgamated instruction was harmless error. If the state had been restricted to proving negligence and the instruction limited to that, there was a substantial probability that Pugliese would have been acquitted. Indeed, there is a real question whether the case would have been dismissed at the close of the state's evidence. The instruction, therefore, was not harmless beyond a reasonable doubt, quite the contrary.

*Affirmed.* The writ shall issue within thirty days unless within that time the state shall have taken steps to retry Pugliese for negligent homicide. In the event of such a trial, the state's proof shall be limited to the issue of whether Pugliese acted negligently.

SO ORDERED.